BASKIN, Judge.
Loretha Barnes died during an operation at South Shore Hospital. Personal representatives of her estate sued Dr. Easton and South Shore Hospital on behalf of her survivors and on behalf of the estate. Dr. Easton and his insurer settled the estate’s claim. They received a release providing:
KNOW ALL MEN BY THESE PRESENTS:
That We NAN GREEN and WILLIE GREEN, as co-administrators of the Estate of LORETHA BARNES, deceased,
First party, for and in consideration of the sum of TWO HUNDRED THOUSAND DOLLARS, or other valuable considerations, received from or on behalf of
WILLIAM EASTON, M.D. and ARGONAUT INSURANCE COMPANY,
second party, the receipt whereof is hereby acknowledged,
HEREBY remise, release, acquit, satisfy, and forever discharge only the said second parties of and from all, and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialities, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, in law or in equity, which said first parties ever had, now had [sic], or which any personal representative, successor, heir or assign of said first parties, hereafter can, shall or may have, against said second parties for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of these presents.
This Release shall include all claims which the first parties now have or might have against WILLIAM EASTON, M.D. and ARGONAUT INSURANCE COMPANY arising from medical treatment received by LORETHA BARNES, deceased, while a patient at Southshore Hospital and Medical Center on April 24, 1974 but shall not release any other persons or corporations and specifically shall not release any claims of Southshore Hospital and Medical Center, a Florida corporation, and Hartford Accident and Indemnity Company, a foreign corporation.
Further, this Release, although complete as to WILLIAM EASTON, M.D. and ARGONAUT INSURANCE COMPANY, is expressly made in consideration of payment of TWO HUNDRED THOUSAND DOLLARS ($200,000.00) for the claim of the Estate (that is, loss of net accumulations as set forth in the Florida Standard Jury Instructions) and none of said payment shall be for the claims of the surviving children of LORETHA BARNES, deceased, it being agreed that the claim of the Estate for loss of net accumulations has a value for settlement purposes of $200,000.00 but that the claim of the survivors exceeds substantially in value this amount, and that this Release is not intended to alter in any way the liability of Southshore Hospital and Medical Center and Hartford Accident and Indemnity Company to NAN GREEN and WILLIE GREEN as co-administrators of the Estate of LORETHA *163 BARNES, deceased, for the benefit of each of the surviving children of LORE-THA BARNES, deceased, (emphasis added)
When the action filed by the personal representatives on behalf of the children resulted in a verdict of $500,000 against the hospital, the hospital tried unsuccessfully to set off the $200,000 paid on behalf of Dr. Easton’s obligation against the $500,000 award. Upon failing to obtain a set-off, South Shore sought contribution from Dr. Easton, but the trial court rejected South Shore’s claim and granted summary judgment in favor of Easton and his insurer.
The issue presented in this appeal is whether the release provided by the personal representatives precludes South Shore from obtaining contribution from Easton toward payment of the children’s claims.
The Florida Wrongful Death Act, section 768.21, Florida Statutes (1981) provides:
768.21 Damages. — All potential beneficiaries of a recovery for wrongful death, including the decedent’s estate, shall be identified in the complaint, and their relationships to the decedent shall be alleged. Damages may be awarded as follows:
(1) Each survivor may recover the value of lost support and services from the date of the decedent’s injury to his death, with interest, and future loss of support and services from the date of death and reduced to present value. In evaluating loss of support and services, the survivor’s relationship to the decedent, the amount of the decedent’s probable net income available for distribution to the particular survivor, and the replacement value of the decedent’s services to the survivor may be considered. In computing the duration of future losses, the joint life expectancies of the survivor and the decedent and the period of minority, in the case of healthy minor children, may be considered.
(3) Minor children of the decedent may also recover for lost parental companionship, instruction, and guidance and for mental pain and suffering from the date of injury.
(6) The decedent’s personal representative may recover for the decedent’s estate the following:
(a) Loss of earnings of the deceased from the date of injury to the date of death, less lost support of survivors excluding contributions in kind, with interest. Loss of the prospective net accumulations of an estate, which might reasonably have been expected but for the wrongful death, reduced to present money value, may also be recovered:
1. If the decedent’s survivors include a surviving spouse or lineal descendants;
The Act contemplates that damages allowed the estate are separate and distinct from damages recoverable by the deceased’s survivors.
A further indication that the claims are distinct appears in Florida Standard Jury Instruction 6.6(b) and its comment. Net accumulations are recoverable, according to the comment, only when a spouse or lineal descendant is a survivor,
b. Lost accumulations:
The estate’s loss of net accumulations: “Net accumulations” is the part of the decedent’s net income [from salary or business] after taxes, including pension benefits [but excluding income from investments continuing beyond death], which the decedent, after paying his personal expenses and monies for the support of his survivors, would have left as part of his estate if he had lived his normal life expectancy.

Comment on 6.6b

Lost accumulations are recoverable only when the decedent’s survivors include a spouse or lineal descendant. Further instructions may be required if there is evidence that the decedent had income not qualifying as “net business or salary *164 income” within the meaning of § 768.-18(5) F.S.
The release executed by the personal representatives in exchange for $200,000 discharged the doctor only from claims by the estate. It recognizes, however, that the children’s damages exceed $200,000. Thus, the release applies to damages under section 768.21(6), but does not affect damages recoverable under section 768.21(3).
The Uniform Contribution Among Joint Tortfeasors Act, section 768.31(5), Florida Statutes (1981), states:
(5) Release or covenant not to sue.— When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and,
(b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.
Because the release extinguishes Easton’s liability only for damages due the estate and not from damages due to the survivors, South Shore may be entitled to contribution under section 768.31(2)(d):
A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tort-feasor whose liability for the injury or wrongful death is not extinguished by the settlement or in respect to any amount paid in a settlement which is in excess of what was reasonable.
Reversed and remanded for further proceedings consistent with this opinion.