546 So.2d 1102 (1989)
FLORIDA CRUSHED STONE COMPANY, Appellant,
v.
Paulette Andrea JOHNSON, etc., et al., Appellees.
No. 88-1266.
District Court of Appeal of Florida, Fifth District.
June 29, 1989.
Rehearing Denied August 2, 1989.
*1103 Robert E. Austin, Jr. and L. Hunter Limbaugh of Austin, Lawrence & Landis, Leesburg, for appellant.
Lamar D. Oxford of Dean, Ringers, Morgan & Lawton, Orlando, for appellees.
DANIEL, Judge.
Florida Crushed Stone appeals a final judgment in favor of Paulette Johnson, as personal representative of the estate of Brian Johnson, in a wrongful death action. We affirm the jury's finding of comparative liability but reverse and remand for a new trial solely on the issue of damages.
In 1985, Paulette Johnson, as personal representative of the estate of her late husband Brian Johnson, filed a wrongful death action against Florida Crushed Stone and other defendants. Mrs. Johnson sought damages to the estate, to herself as the surviving spouse and to the two Johnson children, Shemay and Chad.
The evidence at trial established that in 1984, Randy Belk drove his semi-tractor to a mine operated and owned by Florida Crushed Stone. Belk realized that he was at the wrong location and he hurriedly attempted to leave. In so doing, his semi-tractor collided with a tractor trailer owned by Brian Johnson, causing it to roll backwards over Brian crushing him to death.
The jury returned a verdict finding Florida Crushed Stone 95% negligent and Brian Johnson 5% negligent. The jury awarded damages in the amount of $700,000 to the estate, $300,000 to Paulette Johnson, $100,000 to Shemay Johnson and $100,000 to Chad Johnson. The total amount of damages was reduced by 5% for Brian's comparative negligence and by $750,000 previously received by the plaintiffs in a settlement. Final judgment in the amount of $390,000 was entered in favor of Mrs. Johnson, as personal representative of the estate.
On appeal, Florida Crushed Stone contends that the jury award of $700,000 to the estate of Brian Johnson was clearly excessive and not supported by the evidence and accordingly the trial court erred in denying its motion for remittitur or new trial. The test to be applied in determining the adequacy of a verdict is whether a jury of reasonable people could have returned that verdict. Griffis v. Hill, 230 So.2d 143 (Fla. 1969). "The appellate court must be ever alert against the temptation to substitute its `verdict' for that of the jury. On the other hand, we must not refuse to act to relieve the injustice of either a grossly inadequate or excessive verdict." 230 So.2d at 145. See also Lassiter v. International Union of Operating Engineers, 349 So.2d 622 (Fla. 1976).
Under the wrongful death act, there are only three elements of recoverable damages for an estate: 1) loss of earnings, 2) loss of net accumulations, and 3) funeral expenses. See § 768.21, Fla. Stat. (1987); Bruce v. Byer, 423 So.2d 413 (Fla. 5th DCA 1982). The wrongful death act contemplates that the damages allowed the estate are separate and distinct from the damages recoverable by the deceased's survivors. South Shore Hospital v. Easton, 441 So.2d 161 (Fla. 3d DCA 1983). Loss of support damages are not part of an award to a decedent's estate. Salazar v. Santos (Harry) & Company, Inc., 537 So.2d 1048 (Fla. 3d DCA 1989).
In the present case, the decedent was 36 years old, married and had two teenage children. Just prior to his death, the decedent worked as a truck driver and earned approximately $18,000 annually. Before moving to Florida, the decedent had his own business and was earning some $30,000 to $35,000 annually. The decedent's death occurred at or soon after the accident and thus there were no lost earnings recoverable by the estate. The funeral expenses were estimated by Mrs. Johnson to be about $5,000. Thus the estate recovered $695,000 for loss of prospective net accumulations.
At the trial, plaintiffs' expert witness, Dr. Frederick Raffa, testified concerning the economic damage to the estate and to *1104 the Johnsons. Based on employment history records, information supplied by the Johnsons, the decedent's life expectancy, and average rates of income increases, Dr. Raffa testified that the future value of the loss of support to Mrs. Johnson was $492,685, the future value of the loss of support to Chad Johnson was $49,855 and the future value of the loss of support to Shemay Johnson was $35,211. Dr. Raffa also testified that the future value of the loss of net accumulations to the estate was $323,672 and that the loss of services to the survivors was $210,524 (based on the decedent supplying seven hours per week on household services) to $421,048 (based on the decedent supplying fourteen hours per week for household services). Dr. Raffa testified that the total future value for all three types of economic loss was $1,111,947 to $1,521,000.[1] According to Dr. Raffa, the present value of all three types of economic loss would be $351,386 to $421,000. Dr. Raffa was later asked for the total loss assuming that the decedent had earned between $30,000 to $35,000 annually. Dr. Raffa replied that the present value of the total loss would be $640,000 to $721,000.
While the jury's verdict need not track the precise figures proposed by an expert witness, the verdict must be set aside if it is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate. See Griesemer v. Prathers, Inc., 413 So.2d 68 (Fla. 2d DCA 1982). Here the highest figure given by Dr. Raffa was $721,000, the present value of the total economic loss. This amount, however, included lost support and services which are not recoverable by the estate. The only evidence as to net accumulations appears to be the future value of $323,672 based on the decedent's present yearly income. Even assuming that the jury used the $30,000 to $35,000 annual income as the decedent's income and doubled the net accumulation loss figure, this amount would be $647,344. This future value amount is still less than the award to the estate and was not reduced to present value.[2] Thus the award of $700,000 to the estate exceeds the maximum limit of the reasonable range of the evidence presented and accordingly Florida Crushed Stone is entitled to a new trial on the issue of damages. See Bruce v. Byer; Nowicki v. School Board of Broward County, 400 So.2d 199 (Fla. 4th DCA 1981).
Florida Crushed Stone also argues that comments made by plaintiffs' counsel during closing arguments improperly influenced the jury to include a punitive element in its award of damages. These comments were to the effect that the jury was the conscience of the community and must "send a message forward about this family." Defense counsel objected to these comments and the objection was sustained. Since defense counsel did not then move for a mistrial, no issue has been preserved for appellate review. See Murray-Ohio Manufacturing Co. v. Patterson, 385 So.2d 1035 (Fla. 5th DCA 1980). See also Simpson v. State, 418 So.2d 984 (Fla. 1982). Even if the issue had been preserved for review, we would decline to reverse for a new trial on this ground because plaintiffs' counsel did not follow his comments with a suggestion or request that the jury punish the defendant as counsel did in Erie Insurance Company v. Bushy, 394 So.2d 228 (Fla. 5th DCA 1981). Had plaintiffs' counsel asked the jury to punish Florida Crushed Stone, such remarks would have been highly improper and patently prejudicial, thus warranting a new trial. See Erie Insurance Company v. Bushy.
AFFIRMED in part; REVERSED and REMANDED in part.
SHARP, C.J., and COBB, J., concur.
NOTES
[1] The figure of $1,521,000 appears to be a mathematical error and should be $1,322,471.
[2] In Seaboard Coast Line Railroad Company v. Burdi, 427 So.2d 1048 (Fla. 3d DCA 1983), the court held that the only recoverable element of the plaintiff's claim to future monetary losses is their present value and that the defendant did not have the burden to present testimony as to the manner in which a reduction to present value is calculated.