711 So.2d 161 (1998)
STATE of Florida, AGENCY FOR HEALTH CARE ADMINISTRATION, Appellant,
v.
Michael ESTABROOK and The Rose, Inc., Appellees.
No. 96-3163.
District Court of Appeal of Florida, Fourth District.
May 13, 1998.
*162 Mark S. Thomas of the State of Florida, Agency for Health Care Administration, Tallahassee, for appellant.
Philip L. Valente, Jr., of Valente & Natale, L.L.C., West Palm Beach, for Appellee Michael Estabrook.

ON MOTION FOR REHEARING
STEVENSON, Judge.
We grant rehearing and substitute our previous opinion with the following.
The issue in this case is whether the Agency for Health Care Administration ("the *163 Agency") can, consistent with federal and state law, satisfy a Medicaid lien with the proceeds of a workers' compensation settlement which have been entirely designated as compensation for services not financed by Medicaid. We hold that the Agency may be reimbursed in full from this settlement. Accordingly, we reverse the trial court's denial of the Agency's petition to enforce its Medicaid lien.
Michael Estabrook was severely injured in a car accident in 1992. He took nothing in the ensuing litigation against the other driver, who was found not negligent following a jury trial. Over the next two years, Florida Medicaid covered a total of $36,216.17 of Estabrook's medical expenses. In his application for Medicaid assistance, Estabrook assigned to the Agency his "rights to third party insurance benefits." In late 1994, the Agency filed a Claim of Lien for $36,844.15.
Months later, Estabrook, Estabrook's employer, and the employer's insurer, Wausau Insurance Companies, reached a workers' compensation settlement. The settlement awards Estabrook $475,000, but expressly provides that most of this sum represents "attendant care benefits," and that none of it represents past or future medical benefits or expenses. The Agency was not informed of, nor did it participate in, the settlement negotiations.
The Agency filed this petition in the circuit court to enforce its Medicaid lien. The Agency presented proof of its expenditures, and argued that it was entitled to satisfy its lien from Estabrook's settlement proceeds no matter how those proceeds are labelled. Estabrook argued that the Agency is entitled to reach only that portion of the settlement corresponding to services that were financed by Medicaid, and that the Agency presented no evidence that "attendant care"which the settlement purports to representis such an expense. Indeed, the Agency conceded that Medicaid does not cover "attendant care."
The trial court denied the Agency's Petition, and the Agency appealed. In our original opinion, we held that the trial court did not err in finding that the settlement represented compensation for services not financed by Medicaid. We now grant the Agency's motion for rehearing, as we conclude that there are no questions of fact in cases such as this; rather, pursuant to state and federal law, the Agency may satisfy its lien from the settlement proceeds without regard to any designations placed thereon by the settling parties.

The Medicaid Program
Medicaid is a cooperative federal-state welfare program providing medical assistance to needy people. See 42 U.S.C. § 1396 et seq.; Public Health Trust of Dade County v. Dade County Sch. Bd., 693 So.2d 562, 564 (Fla. 3d DCA 1997). State participation in the program is voluntary, with each participating state afforded considerable latitude in defining the contours of its particular program. See Alexander v. Choate, 469 U.S. 287, 303, 105 S.Ct. 712, 721, 83 L.Ed.2d 661 (1985). Still, a state that has elected to participate, like Florida, must comply with the federal Medicaid statutes and regulations. See Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 501, 110 S.Ct. 2510, 2513, 110 L.Ed.2d 455 (1990); Public Health Trust of Dade County, 693 So.2d at 564.
The federal Medicaid program, Title XIX of the Social Security Act, requires every participating state to implement a "third party liability" provision which requires the state to seek reimbursement for Medicaid expenditures from third parties who are liable for medical treatment provided to a Medicaid recipient. See § 42 U.S.C. § 1396a(a)(25). A state plan must also provide that, as a pre-requisite to Medicaid eligibility, the applicant assign to the state whatever rights he may have to payment for medical care. See 42 U.S.C. § 1396k(a)(1)(A). Pursuant to these federal directives, Florida has enacted the "Medicaid Third-Party Liability Act" (FTPLA). See § 409.910, Fla. Stat. (Supp.1992).[1]

*164 Florida's Medicaid Third-Party Liability Act
There is no question that the FTPLA itself would allow the Agency in this case to satisfy its lien from the entirety of Estabrook's settlement without regard to any labels placed on the settlement proceeds. To reach this conclusion, one need look no further than the codified statement of legislative intent:
It is the intent of the Legislature that Medicaid be the payer of last resort for medically necessary goods and services furnished to Medicaid recipients.... Medicaid is to be repaid in full from, and to the extent of, any third-party benefits, regardless of whether a recipient is made whole or other creditors paid. Principles of common law and equity as to assignment, lien, and subrogation are to be abrogated to the extent necessary to ensure full recovery by Medicaid from third-party resources.
§ 409.910(1), Fla. Stat. (Supp.1992).
The FTPLA directs the Agency to seek "reimbursement from third-party benefits to the limit of legal liability and for the full amount of third-party benefits...." Id. § 409.910(4). A "third party" is broadly defined as "an individual, entity, or program, excluding Medicaid, that is, may be, could be, should be, or has been liable for all or part of the cost of medical services related to any medical assistance covered by Medicaid." § 409.901(19), Fla. Stat. (1991). A "benefit" is any sum of money that is "related to" any covered injury or medical care; only those third-party sums that are "not related in any way to a covered injury or illness" are beyond the Agency's grasp. Id. § 409.901(2); § 409.910(12), Fla. Stat. (Supp.1992). Expressly included as examples of "third party benefits" are "health insurance" proceeds and "medical benefits under workers' compensation." § 409.910(20), Fla. Stat. (1991).
The FTPLA provides at least three mechanisms by which the Agency can recoup its expenditures from third parties: (1) the Agency is statutorily granted an "automatic lien" for the full amount of medical assistance provided by Medicaid, § 409.910(6)(c), Fla. Stat. (Supp.1992); (2) the Agency is "automatically subrogated" to any rights to third-party benefits, id. § 409.910(6)(a); and (3) the acceptance of Medicaid benefits results in an automatic assignment to the Agency of the recipient's rights to any third-party benefits, id. § 409.910(6)(b).
Florida's Act sets forth a procedure specifically governing the distribution of settlement proceeds. See id. § 409.910(11). Initially, prior to any settlement, the Agency must be given notice as well as a reasonable opportunity to file its lien and satisfy its rights as lien-holder, assignee, and subrogee. Id. § 409.910(11)(d). Following a settlement, the court must segregate an amount sufficient to repay the Agency and order such amount be paid directly to the Agency. Id. § 409.910(11)(c). Of particular significance in this case are the following two provisions:
[T]he entire amount of any settlement of the recipient's action or claim involving third-party benefits, with or without suit, is subject to the department's claims for reimbursement of the amount of medical assistance provided and any lien pursuant thereto.
Id. § 409.910(11)(e).
The department's rights of recovery created by this section ... shall not be limited to some portion of recovery from a judgment, award, or settlement.
Id. § 409.910(12).
The FTPLA contemplates collusion between the Medicaid recipient and settling third parties,[2] and provides the Agency with at least three remedial options: (1) having the settlement declared void, see Fla. Admin. Code R. 59G-7.034(4)(b); (2) suing for impairment of the lien, see § 409.910(6)(c)7, Fla. Stat. (Supp.1992); Fla. Admin. Code R. 59G-7.033(2)(f)2; or (3) the course of action pursued by the Agency in this case, namely, *165 declaring void any designation of settlement proceeds as being for nonmedical expenses:
Insurance and other third-party benefits may not contain any term or provision which purports to limit or exclude payment or provisions of benefits for an individual if the individual is eligible for, or a recipient of, medical assistance from Medicaid, and any such term or provision shall be void as against public policy.
§ 409.910(15), Fla. Stat. (Supp.1992);
The Medicaid lien is not restricted to a portion of a settlement or tort recovery which the parties choose to designate as compensation for medical expenses.
Fla. Admin. Code R. 59G-7.033(2)(I).
As we have noted, it is clear that under the above provisions, the Agency is entitled to recoup its Medicaid expenditures from the entirety of Estabrook's settlement no matter how the settlement is structured.

The federal mandate
The FTPLA, however, is not the end of our inquiry. Estabrook argues that the Act cannot be interpreted to allow the Agency to reach that portion of his settlement which represents "attendant care," since, he claims, federal law limits the states to satisfying Medicaid liens with only those sums that represent compensation for Medicaid-covered expenditures. Thus, we are drawn into an analysis of federal Medicaid law, which, as the Supreme Court recognized in Schweiker v. Gray, 453 U.S. 34, 43, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981), is "among the most intricate" acts ever drafted by Congress.
Estabrook first points to a portion of the Social Security Act itself, which provides:
A State plan for medical assistance must
...
(25) provide -
(A) that the State or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties (including health insurers) to pay for care and services available under the plan ... [and]
(B) that in any case where such legal liability is found to exist ... the State or local agency will seek reimbursement for such assistance to the extent of such legal liability.
42 U.S.C. § 1396a(a)(emphasis added).
Estabrook argues that the plain language of this section permits a state to seek reimbursement from a third party for no more than that party's liability "to pay for care and services available under the plan." Although Estabrook's reading of section 1396a is plausible when this provision is considered in a vacuum, we find that this section is more consistent with the entire federal scheme when it is interpreted as requiring, or at the every least permitting, a state to seek reimbursement from a third party to the full extent of that party's liability for an injury that was treated with Medicaid funds.
We begin with the legislative history of section 1396a(a)(25) itself, where Congress clearly stated: "Medicaid is intended to be the payor of last resort, that is, other available resources must be used before Medicaid pays...." S.Rep. No. 99-146, at 312 (1985), reprinted in 1986 U.S.C.C.A.N. 279. Florida has explicitly adopted and codified this federal legislative intent, see § 409.910(1), Fla. Stat. (Supp.1992), and this state's formidable Third-Party Liability Act is in direct furtherance of this overriding policy.
We also take note of the federal statutory procedure for the collection and disbursement of third-party funds:
Such part of any amount collected by the State ... shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of an individual ... and the remainder of such amount collected shall be paid to such individual.
42 U.S.C. § 1396k(b). This provision was relied upon in the recent case of Link v. Town of Smithtown, 175 Misc.2d 238, 239, 670 N.Y.S.2d 692, 693 (1997), which faced the identical issue addressed in this case.[3] In *166 concluding, as we do, that a state may satisfy its lien with the entirety of a settlement notwithstanding any designations placed on the proceeds, Link reasoned:
[Section 1396k(b) ] indicates that the government has priority in recouping funds from third parties who are liable for a Medicaid recipient's medical expenses, and that only the remainder of those funds becomes available to the Medicaid recipient.
Id. at 241-42, 670 N.Y.S.2d at 695 (quoting Cricchio v. Pennisi, 90 N.Y.2d 296, 660 N.Y.S.2d 679, 683 N.E.2d 301, 304 (1997), which referred to section 1396k as setting forth a "hierarchy for recoupment mandated by Congress"). We agree that the federal statutory scheme envisions reimbursement from the entirety of a third party's liability for an injury treated with Medicaid funds.
Estabrook argues that under Edwards v. Griepentrog, 804 F.Supp. 1310 (D.Nev.1992), courts must consider the extent to which a third-party benefit is compensation for a Medicaid-covered service, and that the State may reach only that portion of the benefit. In Griepentrog, the court held that Veterans Administration Unusual Medical Expense ("VA UME") payments to people also receiving Medicaid may not be reached by the state as reimbursement for the Medicaid expenditures. The court reasoned that the UME program did not meet the federal regulatory definition of a "third party"that is, "any individual, entity or program that is or may be liable for all or part of the expenditures for medical assistance furnished under a state plan," id. at 1312 (quoting 42 C.F.R. § 433.136(3))as the very purpose of UME payments is to reimburse the recipient for his own out-of-pocket expenses.
On close analysis, it is apparent that the decision in Edwards v. Griepentrog was the court's means of enforcing its prior holding that UME payments could not be lawfully included as Medicaid posteligibility "income," which would reduce the recipient's Medicaid entitlement. See Sherman v. Griepentrog, 775 F.Supp. 1383 (D.Nev.1991). Following Sherman v. Griepentrog, the State of Idaho sought to "completely subvert" the court's mandate by requiring Medicaid recipients to turn over their UME payments via Medicaid's third-party liability provisions. See Edwards v. Griepentrog, 804 F.Supp. at 1310. Thus, the court's decision that the UME program is not a "third party" was necessary to ensure that the state not do indirectly what it had been forbidden to do directly.
In this case, allowing the Agency to dip into Estabrook's entire settlement would not provide the Agency with a round-about means of circumventing the law. Unlike the UME payments at issue in the Griepentrog cases, personal injury settlement proceeds from a private insurance company may indeed be counted as income which would limit future Medicaid eligibility. As the court pointed out in Link v. Town of Smithtown,
If plaintiff [i.e., the Medicaid recipient] had available resources at the time of her accident she would not have been eligible for Medicaid. Even if the source of those funds had been a prior personal injury settlement solely reflecting compensation for plaintiff's "pain and suffering," [or, we submit, any other item not borne by Medicaid,] plaintiff would not have been eligible for Medicaid.
175 Misc.2d at 243-44, 670 N.Y.S.2d at 696 (citations omitted).
In order to further explain our disagreement with Estabrook's reliance on Griepentrog, we must first articulate what we understand to be the proper methodology for assessing a state's entitlement to funds under the Third-Party Liability framework: (1) the initial inquiry is whether the paying entity is in fact a "third party"; that is, whether the entity is or may be liable for any parteven a negligible portionof the Medicaid-provided services, see 42 C.F.R. § 433.136(3); and (2) once it is determined that the entity qualifies as a "third party," then the Agency may satisfy its lien out of the entirety of the third party's liability for the covered injury, even if such liability includes components *167 not financed by Medicaid, such as attendant care, pain and suffering, or punitive damages, see 42 U.S.C. § 1396k(b). Griepentrog dealt exclusively with the threshold issue of whether the source of funds in that case was a "third party"the court did not hold that the funds collected from an entity qualifying as a "third party" must be allocated.
Addressing the threshold question of "third party" status in this case, we have no trouble concluding that the source of the workers' compensation settlement proceeds, Wausau Insurance Companies, is a "third party." Wausau meets both the federal and state definitions of a "third party," as it "may" indeed be liable for "all or part" of the Medicaid expenditures made in this case. See 42 C.F.R. § 433.136(3); § 409.901(19), Fla. Stat. (1991); see also 42 U.S.C. § 1396a(a)(25)(A) and § 409.910(20), Fla. Stat. (1991)(both expressly including health insurance as a potentially liable third party, with the Florida provision also specifically including "medical benefits under workers' compensation").
Accordingly, the Agency is entitled to satisfy its lien from the entirety of Estabrook's settlement.
REVERSED and REMANDED.
SHAHOOD, J., concurs.
STONE, C.J., specially concurs with opinion.
STONE, Chief Judge, concurring specially.
I concur in granting rehearing and in the majority opinion. However, I would note that the issue in this appeal involves the claim of a medicaid recipient and is not a due process attack on the statute raised by a competing lien claimant without notice of the state's claim.
NOTES
[1] The parties have agreed that the 1992 version of the FTPLA properly governs this case. The most recent version of the statute has been renumbered and has been amended in certain respects, but its substance remains essentially unchanged with respect to the provisions implicated in this case.
[2] No action of the recipient shall prejudice the rights of the department under this section. No settlement, agreement, consent decree, trust agreement, annuity contract, pledge, security arrangement, or any other device, hereafter collectively referred to in this subsection as a "settlement agreement," entered into or consented to by the recipient or his legal representative shall impair the department's rights.

§ 409.910(13), Fla. Stat. (Supp.1992).
[3] The New York court framed the issue as follows:

The issue to be determined is whether the entire amount of a personal injury settlement obtained by a Medicaid recipient from a third party tort-feasor or only the portion attributable to past medical expenses is available to satisfy a lien filed by the Department of Social Services to recoup medical expenses paid on behalf of the recipient.
Link. 175 Misc.2d at 239, 670 N.Y.S.2d at 693.