# Third District Court of Appeal

## State of Florida

Opinion filed February 17, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-2115
Lower Tribunal No. 12-470
_____

**The Estate of Betsy Gladis Hernandez,**
Appellant,

vs.

**Agency for Health Care Administration,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Maria M. Korvick, Judge.

Marlene S. Reiss, for appellant.

Alexander R. Boler (Tallahassee), for appellee.

Before SUAREZ, C.J., and LAGOA and LOGUE, JJ.

LOGUE, J.

The Estate of Betsy Gladis Hernandez appeals an order allocating a portion

of proceeds from a wrongful death settlement to pay the Medicaid lien held by the

Agency for Health Care Administration. The trial court apportioned the settlement amount based on the formula in Florida's Medicaid Third-Party Liability Act. See § 409.910(11)(f), Fla. Stat. (2012). We affirm.

## FACTS AND PROCEDURAL HISTORY

In 2010, Ms. Hernandez died from complications from a rare condition. She was survived by her husband and child. Her death was allegedly caused by Baptist Hospital physicians' misdiagnosis and treatment of her condition. Prior to the Estate filing suit, Baptist Hospital agreed to settle any wrongful death claims against it for $700,000. It is undisputed that the written settlement agreement did not apportion the monies between the Estate and survivors.[1]

Due to Florida's participation in the Medicaid program, the Agency had paid $409,676.36 of Ms. Hernandez's medical expenses. These payments resulted in an automatic lien on "collateral" for medical expenses paid on Ms. Hernandez's behalf. See § 409.910(6)(c), Fla. Stat. "Collateral" includes wrongful death settlements. See §§ 409.910(6)(c) & 409.901(7)(b), Fla. Stat. (2012).

In 2012, the Estate filed a petition in probate court to determine the Agency's lien. The petition requested that of the $700,000 settlement amount, $500,000 be apportioned to cover the survivors' wrongful death statutory damages.

---

[1] The written settlement agreement does not appear in the record, but the Estate admitted to the trial court that the agreement "made no reference to what type of damages the $700,000 represented."

2

The remaining $200,000 would be apportioned for the Medicaid lien and other economic damages incurred by the Estate, including attorney's fees. In response, the Agency argued that, under the formula in Florida's Medicaid Third-Party Liability Act, it was entitled to $262,500 prior to any wrongful death apportionment. See § 409.910(11)(f). The Estate disagreed. Citing to Arkansas Department of Health & Human Services v. Ahlborn, 547 U.S. 268 (2006), it contended that the federal Medicaid Act's anti-lien provision, 42 U.S.C. § 1396p(a)(1), preempts Florida's Medicaid Third-Party Liability Act. The Estate explained that the Agency sought monies allocated to the survivors and that, under Ahlborn's interpretation of the anti-lien provision, the provision bars states from asserting a lien on the portions of a settlement not allocated to medical expenses.

Prior to any ruling on the petition, the United States Supreme Court issued its decision in Wos v. E.M.A., 133 S. Ct. 1391 (2013). The Estate then moved for an evidentiary hearing, arguing that Wos required an evidentiary hearing to determine what portion of the settlement qualifies as medical expenses. The Agency disagreed and argued that Ahlborn and Wos are inapplicable where the Medicaid recipient is deceased. Thus, the Agency reasoned that an evidentiary hearing was unnecessary because the petition turned on a straightforward application of the formula in Florida's Medicaid Third-Party Liability Act.

The trial court ultimately agreed with the Agency and denied the Estate's motion for an evidentiary hearing. It entered an order requiring the Estate to reimburse the Agency $262,500 from the $700,000 wrongful death settlement. The Estate moved for rehearing, which was denied, and then filed its notice of appeal in this court. The Florida Supreme Court subsequently issued its opinion in Garcon v. Florida Agency for Health Care Administration, 150 So. 3d 1101 (Fla. 2014), essentially recognizing that Florida courts must apply Wos.

**ANALYSIS**

The Estate argues that the trial court erred in one of two ways. First, citing to Ahlborn, Wos, and Garcon, the Estate contends that Florida's Medicaid Third-Party Liability Act is preempted by federal law which requires an evidentiary hearing to determine what portion of the settlement qualifies as medical expenses. In the alternative, the Estate argues that an evidentiary hearing is necessary because Florida's Wrongful Death Act prohibits the Agency from asserting a Medicaid lien on the portions of the settlement allocated to Ms. Hernandez's survivors. We will address each issue in turn.[2]

I.      **No Federal Preemption**

_____

[2] Both issues are questions of law reviewed de novo. See Vreeland v. Ferrer, 71 So. 3d 70, 73 (Fla. 2011) ("Whether state law is preempted by federal law is a pure question of law that is subject to de novo review."); Borden v. E.-European Ins. Co., 921 So. 2d 587, 591 (Fla. 2006) ("This issue involves a question of statutory interpretation and thus is subject to de novo review.").

4

The first issue involves the interplay between Florida and federal law. In 1965, Congress created the Medicaid program to provide joint federal and state funding of medical care for individuals who cannot afford to pay their own medical costs. See 42 U.S.C. § 1396 et seq. State participation in the program is voluntary. However, once a state elects to participate, like Florida, the state must comply with certain requirements imposed by federal Medicaid statutes. Pub. Health Trust of Dade Cty., Fla. v. Dade Cty. Sch. Bd., 693 So. 2d 562, 564 (Fla. 3d DCA 1996).

In the early years of the program, Congress adopted the anti-lien provision. It provides:

> (a) Imposition of lien against property of an individual on account of medical assistance rendered to him under a State plan
>
> (1) No lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan, except-
>
> (A) pursuant to the judgment of a court on account of benefits incorrectly paid on behalf of such individual, or
>
> (B) in the case of the real property of an individual-[who is in a nursing home and required by law to spend his own income on those expenses, and who cannot reasonably be expected to return home.]

42 U.S.C. § 1396p(a)(1) (emphasis added).

The Medicaid program is a cooperative one. The Federal Government pays between 50% and 83% of the costs a state incurs for patient care. Ahlborn, 547

U.S. at 275. "[I]n return, the State pays its portion of the costs and complies with certain statutory requirements for making eligibility determinations, collecting and maintaining information, and administering the program." Id. (citing 42 U.S.C. § 1396a). One such requirement is that each participating state "implement a 'third party liability' provision which requires the state to seek reimbursement for Medicaid expenditures from third parties who are liable for medical treatment provided to a Medicaid recipient." Roberts v. Albertson's Inc., 119 So. 3d 457, 459 (Fla. 4th DCA 2012) (citing § 42 U.S.C. 1396a(a)(25)).

To comply with this federal mandate, Florida enacted the Medicaid Third-Party Liability Act. It provides the Agency with three ways to recover expenses from third parties: (1) automatic subrogation to any rights of a Medicaid recipient to third-party benefits; (2) automatic assignment of the recipient's rights to any third-party benefits; or (3) automatic lien on "collateral." § 409.910(6)(a)-(c), Fla. Stat. "Collateral" and "third-party benefits" include "[a]ll judgments, settlements and settlement agreements rendered or entered into and related to such causes of action [related to a covered injury necessitating Medicaid payments]." § 409.901(7)(b) & (28), Fla. Stat.

Although the entire amount of any settlement may be subject to a Medicaid lien, the amount of recovery is limited by the amount of Medicaid assistance

provided. § 409.910(11)(e), Fla. Stat. It is also limited by a statutory formula. § 409.910(11)(f), Fla. Stat.

A body of law has developed which further limits the Agency's ability to assert a lien on portions of settlements. In Ahlborn, a case arising out of a personal injury lawsuit, the federal Medicaid Act's anti-lien provision preempted a state law which automatically imposed a lien on tort settlement proceeds obtained by the Medicaid recipient. In that case, the settlement apportioned the recovery between medical and non-medical expenses. The United States Supreme Court held that the anti-lien provision barred the state from asserting a lien on the portions of the settlement not allocated to medical expenses. Ahlborn 547 U.S. at 284.

In Wos, the Court went a step further in a case arising out of a medical malpractice settlement which did not divide the recovery between medical and non-medical expenses. The Court analyzed a state statute which could be interpreted as creating a conclusive presumption that one-third of a Medicaid beneficiary's tort recovery represented compensation for medical expenses. To the extent the statute created such a presumption, it was preempted by the Medicaid Act's anti-lien provision. The Court held that the Medicaid beneficiary must be provided with an opportunity to show that the parties to the settlement apportioned an amount for medical expenses that was less than the amount of the Medicaid lien. Wos, 133 S. Ct. at 1402.[3]

Recently, the Florida Supreme Court issued an opinion which essentially recognized that Florida courts must apply Wos. Garcon, 150 So. 3d at 1102 (vacating a decision and remanding the case for further proceedings consistent with Wos). However, the Ahlborn, Wos, and Garcon decisions arose in the context of a living Medicaid recipient.

The issue of whether these decisions apply in the context of a deceased Medicaid recipient appears to be an issue of first impression in this state. In Austin v. Capital City Bank, No. 111,894, 2015 WL 4366519 (Kan. Ct. App. June 26, 2015), however, the Court of Appeals of Kansas addressed a post-Wos case where a state agency sought to recover Medicaid payments from a special needs trust after the Medicaid recipient had died. There, a medical malpractice suit was filed on behalf of a child who had suffered permanent disabilities. The suit was ultimately settled. Under the terms of the settlement, a special needs trust was created which was designed to allow the child to keep the settlement funds and remain eligible to receive medical assistance through Medicaid. See 42 U.S.C. §

---

[3] In response to Wos, the Florida legislature amended the Medicaid Third-Party Liability Act. § 409.910(17)(b), Fla. Stat. (2013). It now provides Medicaid beneficiaries with the opportunity to rebut the Act's statutory formula. Id. In this case, the settlement was reached before the 2013 amendment took effect. Cf. Suarez v. Port Charlotte HMA, LLC, 171 So. 3d 740, 742 (Fla. 2d DCA 2015) (holding that the 2013 amendment applied because the settlement was reached after the amendment took effect). Neither the Estate nor the Agency raised any issue regarding the amendment's application here. We therefore decline to reach the issue.

8

1396p(d)(4)(A) (2012). The child was the trust's primary beneficiary, her mother was the remainder beneficiary, and a bank was named trustee. After the child passed away, the bank eventually stopped making payments from the trust to the mother. Id. at *1. The mother then filed suit and named the state as a necessary party. Among other points, she argued that Ahlborn and Wos represent rules of general applicability for all Medicaid recipients. Id. at *4. Because the trust had no designation for medical care expenses, the mother contended that the state was not entitled to recover Medicaid payments from assets in the trust. Id. at *3.

The Austin court disagreed and concluded that the mother's reliance on Ahlborn and Wos was misplaced. It cogently explained why those decisions do not represent rules of general applicability for all Medicaid recipients:

> In those cases, the [United States Supreme] Court considered the anti-lien provision of the federal Medicaid statute, which states, in relevant part, that "[n]o lien may be imposed against the property of any individual prior to his [or her ] death on account of medical assistance paid or to be paid on his [or her] behalf under the State plan." (Emphasis added.) 42 U.S.C. § 1396p(a)(1). The plain language of 42 U.S.C. § 1396p(a)(1) clearly reflects Congress' intent that the anti-lien provision apply only to living Medicaid recipients.

Id. at *4.

We agree with Austin and find this authority to be persuasive. By its express terms, the Medicaid Act's anti-lien provision does not apply to a Medicaid lien imposed against the property of a Medicaid recipient after her death. We cannot ignore the plain meaning of this provision. As our Supreme Court has repeatedly

9

stated, "[i]f the language of the statute is clear and unequivocal, then the legislative intent must be derived from the words used without involving incidental rules of construction or engaging in speculation as to what the judges might think that the legislators intended or should have intended." Hess v. Philip Morris USA, Inc., 175 So. 3d 687, 692 (Fla. 2015) (citation omitted). Thus, we hold that the federal Medicaid Act's anti-lien provision does not preempt Florida's Medicaid Third-Party Liability Act where a Medicaid lien is imposed on a wrongful death settlement.

## II. Florida's Medicaid Third-Party Liability Act and Wrongful Death Act

The second issue on appeal involves the interplay between Florida's Medicaid Third-Party Liability Act and Wrongful Death Act. As noted above, the Medicaid Third-Party Liability Act governs the Agency's right to recover payments made for medical expenses and provides the Agency with several ways to recover expenses from third parties. Regarding subrogation, the Act specifically provides:

> The agency is <u>automatically subrogated to any rights that</u> an applicant, recipient, or <u>legal representative has to any third-party benefit for the full amount of medical assistance provided by Medicaid</u>. Recovery pursuant to the subrogation rights created hereby shall not be reduced, prorated, or applied to only a portion of a judgment, award, or settlement, but is to provide full recovery by the agency from any and all third-party benefits. Equities of a recipient, his or her legal representative, a recipient's creditors, or health care providers shall

10

not defeat, reduce, or prorate recovery by the agency as to its subrogation rights granted under this paragraph.

§ 409.910(6)(a), Fla. Stat. (emphasis added).

The legislative intent behind this Act is clear. Medicaid is to be repaid prior to any other person, program, or entity:

It is the intent of the Legislature that Medicaid be the payor of last resort for medically necessary goods and services furnished to Medicaid recipients. All other sources of payment for medical care are primary to medical assistance provided by Medicaid. If benefits of a liable third party are discovered or become available after medical assistance has been provided by Medicaid, it is the intent of the Legislature that Medicaid be repaid in full and prior to any other person, program, or entity. Medicaid is to be repaid in full from, and to the extent of, any third-party benefits, regardless of whether a recipient is made whole or other creditors paid. Principles of common law and equity as to assignment, lien, and subrogation are abrogated to the extent necessary to ensure full recovery by Medicaid from third-party resources. It is intended that if the resources of a liable third party become available at any time, the public treasury should not bear the burden of medical assistance to the extent of such resources.

§ 409.910(1), Fla. Stat. (emphasis added). This language reflects the legislature's interest in providing options to fund medical assistance it has deemed important to public welfare.

When interpreting the Medicaid Third-Party Liability Act, the Florida Supreme Court has warned the judicial branch to "be cautious when evaluating the choices made by the legislative branch as to the appropriate funding for programs it has deemed important to the public welfare. We must avoid unnecessarily

11

limiting the funding options available to the legislature when addressing today's policy problems." Agency for Health Care Admin. v. Associated Indus. of Fla., Inc., 678 So. 2d 1239, 1243 (Fla. 1996) (determining the constitutionality of the Act). This recognition may appear prescient. With Medicaid costs and qualified individuals on the rise, the interest in protecting Florida's ability to recover funds to maintain this source of public benefits has also undoubtedly increased.

Against this backdrop, the Wrongful Death Act allows a decedent's personal representative to bring a single action against negligent parties to recover damages for the decedent's survivors and estate. See § 768.21, Fla. Stat. (2012); Cont'l Nat'l Bank v. Brill, 636 So. 2d 782, 784 (Fla. 3d DCA 1994). It is silent on the matter of Medicaid liens. It contemplates, however, that the damages recovered by the decedent's survivors are distinct from the damages recovered by the decedent's estate. See § 768.21, Fla. Stat.; S. Shore Hosp. v. Easton, 441 So. 2d 161, 163 (Fla. 3d DCA 1983). For this reason, one line of cases has held that certain statutory liens do not attach to wrongful death settlement proceeds attributable to survivors' claims. See, e.g., Hartford Ins. Co. v. Goff, 4 So. 3d 770 (Fla. 2d DCA 2009) (workers' compensation lien).

However, another line of cases has allowed Medicaid liens to attach to wrongful death settlement funds which may be attributable to the survivors' claims. The key distinction between the two lines of cases is the plain meaning of

12

the Medicaid Third-Party Liability Act. Unlike the statutes giving rise to the liens in Goff and other similar cases, the Medicaid Third-Party Liability Act's provisions require that the Agency's lien has priority. See § 409.910(1) & (6), Fla. Stat.

For example, in Strafford v. Agency for Health Care Administration, 915 So. 2d 643 (Fla. 2d DCA 2005), and Englich v. Agency for Healthcare Administration, 916 So. 2d 994 (Fla. 4th DCA 2005), the Second and Fourth Districts held, respectively, that a Medicaid lien must be satisfied in accordance with the Medicaid Third-Party Liability Act prior to apportioning a wrongful death settlement between the decedent's estate and survivors. In both cases, the estate's personal representative sought to allocate portions of a wrongful death settlement between the survivors and the Agency without fully satisfying the Agency's Medicaid lien. Both courts rejected the personal representative's arguments by relying on the plain language of the Act, such as the provisions discussing subrogation and requiring Medicaid to be repaid prior to any other person, program, or entity. Strafford, 915 So. 2d at 646 ("Admittedly, the settlement in this case occurred in the context of a wrongful death action in which the recoverable damages for the survivors and the decedent's estate are distinct . . . . Even so, the [Medicaid Third-Party Liability] Act's provisions require that the Agency be paid prior to any apportionment between the estate and the survivors."); Englich, 916

13

So. 2d at 997 ("Given the plain meaning of the statute, and the cases interpreting its provisions, the trial court correctly denied the plaintiff's request to reduce the Medicaid lien proportionately to the amount the survivors' recovery bore to their total claim.").

In Ross v. Agency for Health Care Administration, 947 So. 2d 457 (Fla. 3d DCA 2006), this court expressly adopted the reasoning of Strafford and Englich. Like Englich and Strafford, Ross involved an estate's personal representative seeking to allocate wrongful death settlement proceeds among the survivors and the Agency without fully satisfying the Agency's lien. This court held that the Agency must be paid in accordance with the Medicaid Third-Party Liability Act:

> Contrary to the personal representative's contention, she does not have the right to allocate the settlement funds in such a manner that the Agency receives less than the full amount of its expenditures for medical assistance. Strafford v. Agency for Health Care Admin., 915 So.2d 643 (Fla. 2d DCA 2005) ("Following a settlement, the court is required to segregate an amount sufficient to repay the Agency's expenditures for medical assistance and shall order this amount to be paid directly to the Agency."). The Wrongful Death Act does not alter this requirement. Englich v. Agency for Healthcare Admin., 916 So.2d 994 (Fla. 4th DCA 2005).

Ross, 947 So. 2d at 458. We are bound by that decision.

Contrary to the Estate's contention, Ahlborn, Wos, and Garcon have not undermined Ross as authority. As explained above, Ahlborn, Wos, and Garcon are inapplicable here because the federal Medicaid Act's anti-lien provision applies

14

only to living Medicaid recipients. In cases where, as here, a Medicaid lien was imposed against a wrongful death settlement, <u>Ross</u> controls.

Affirmed.