KLINGENSMITH, J.
Olive Goheagan, as Personal Representative for the Estate of Molly Swaby (“the Estate”), appeals from a final order denying the Estate’s motion for equitable distribution, and ordering the Estate to reimburse the Florida Agency for Health Care Administration (“AHCA”) in the full amount of its Medicaid lien. At issue is whether the trial court erred by applying section 409.910(1l)(f), Florida Statutes (2014), in refusing to reduce the Medicaid lien to an amount equal to the amount recovered by the Estate for past medical expenses. We hold that section 409.910(ll)(f) of Florida’s Medicaid Third-Party Liability Act (the “Florida Medicaid Act”) is not preempted by the anti-lien *114 provision of federal Medicaid law in wrongful death actions.
This case comes to us under a tragic set of facts. In February 2007 Molly Swaby was severely injured in a car accident after being struck from behind by another driver traveling at a high rate of speed. She suffered a spinal cord injury and was in a coma for approximately three months before passing away in May 2007. Swaby’s medical expenses totaled $970,179.97, of which Medicaid paid $95,476.60. The Estate brought a wrongful death action against the driver, resulting in a multimillion dollar verdict at trial After final judgment was entered against the driver, the Estate brought a third-party bad faith claim against the driver’s automobile insurance carrier, eventually settling the case for $1,000,000. AHCA then asserted a lien for $95,476.60 against the settlement proceeds of the bad faith claim based on section 409.910(ll)(f).
The Estate moved for equitable distribution to reduce the Medicaid lien, arguing that section 409.910(ll)(f) was preempted by federal law to prevent the state from being reimbursed from monies recovered by a beneficiary for any category of damages other than past medical expenses. Although AHCA expended $95,476.60 on Swaby’s medical expenses, the Estate argued that this sum amounted to only 3.5% of the jury’s verdict. As such, the Estate asserted that the lien should be reduced to an amount equal to 3.5% of the actual settlement proceeds, after subtracting attorney’s fees and costs.[1]
The trial judge held a hearing to allow Swaby’s beneficiaries the opportunity to rebut the statutory formula under section 409.910(ll)(f), and to contest AHCA’s entitlement to the full amount of the lien pursuant to section 409.910(17)(b), Florida Statutes. In its order, the court ruled that the formula under section 409.910(ll)(f) applied in wrongful death cases, not the anti-lien provision of the federal Medicaid statute. It denied the Estate’s motion to reduce the lien and ordered the Estate to reimburse AHCA $95,476.60 in full satisfaction of its Medicaid lien for benefits paid on behalf of Swaby. This timely appeal followed.
As this appeal involves both the interpretation and application of section 409.910(ll)(f), as well as a question of federal preemption of that statute, we review the trial court’s order under a de novo standard of review. Fla. Dep’t of Agric. & Consumer Servs. v. Mendez, 98 So.3d 604, 607 (Fla. 4th DCA 2012) (“Statutory interpretation is reviewed de novo.’’); 770 PPR, LLC v. TJCV Land Trust, 30 So.3d 613, 616 (Fla. 4th DCA 2010) (“When faced with questions of statutory application and federal preemption, we apply a de novo standard of review.” (quoting Marcy v. DaimlerChrysler Corp., 921 So.2d 781, 783 (Fla. 5th DCA 2006))).
a. Federal Social Security Act — Medicaid Provisions
“Medicaid is a cooperative federal-state welfare program providing medical assistance to needy people.” Roberts v. Albertson’s Inc., 119 So.3d 457, 458 (Fla. 4th DCA 2012) (quoting Agency for Health Care Admin. v. Estabrook, 711 So.2d 161, 163 (Fla. 4th DCA 1998)). Under this program, the federal government reimburses, a portion of the states’ expenses, requiring the states to comply with the applicable federal rules and regulations. See Ark. Dep’t of Health & Human Servs. *115 v. Ahlborn, 547 U.S. 268, 275, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006) (stating that “[s]tates are not required to participate in Medicaid, but all of them do. The program is a cooperative one; the Federal Government pays between 50% and 83% of the costs the State incurs for patient care, and, in return, the State pays its portion of the costs and complies with certain statutory requirements for making eligibility determinations, collecting and maintaining information, and administering the program.” (footnote omitted)). “Even though state participation in the program is voluntary, once a state elects to participate, the state must comply with federal Medicaid statutes.” Roberts, 119 So.3d at 458.
To assist in preserving the long-term sustainability of the program and provide a mechanism to recover public funds spent on care, federal law requires that:
[T]he State or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties (including ... parties that are ... legally responsible 'for payment of a claim for a health care item or service) to pay for care and services available under the plan....
42 U.S.C. § 1396a(a)(25)(A) (2012).
To the extent a state Medicaid program has provided medical assistance to a recipient, federal law also provides that a state has the right to reimbursement from any third parties found legally liable for causing those expenditures,, and must have laws in place providing the state with the rights to reimbursement:
[T]o the extent that payment has been made under the State plan for medical assistance in any case where' a third party has a legal liability to make payment for such assistance, the State has in effect laws under which, to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual, the, State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services!.]
Id. § 1396a(a)(25)(H).
Where such a legal liability is found after medical assistance has been obtained, “the State or local agency will seek reimbursement for such assistance to the extent of such legal liability.” Id. § 1396a(a)(25)(B).
Any amount collected by the state “shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of an individual ... and the remainder of such amount collected shall be paid to such individual.” 42 U.S.C. § 1396k(b) (2012). In furtherance of obtaining these reimbursements, federal law requires that Medicaid recipients must assign their rights to claims against third-parties as a condition of eligibility for medical assistance under the state plan. Id. § 1396k(a)(l)(A).
To protect the Medicaid recipient from additional liability, the state’s reimbursement is limited to the amount actually paid by the Medicaid program: “any amount collected by the State ... shall be retained by the State as is necessary to reimburse it. for medical assistance payments made on behalf of an individual ... and the remainder of such amount collected shall be paid to such individual.” Id. § 1396k(b).
As additional protection for the recipient, under. section 1396p(a)(l) (the “anti-lien statute”), “[n]o lien may be imposed against the property of any individual pri- or to his death on account of medical assistance paid or to be paid on his behalf under the State plan,” except under limits ed circumstances. 42 U.S.C. § 1396p(a)(1) (2012) (emphasis added). Moreover, sec *116 tion lS96p(b)(l) (the “anti-recovery statute”), provides that “[n]o adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made,” except in certain circumstances not applicable to this case. Id. § 1396p(b)(l).
The United States Court of Appeals for the Third Circuit explained the purpose of these provisions in Tristani ex rel. Karnes v. Richman, 652 F.3d 360, 374 (3d Cir. 2011):
The anti-lien and anti-recovery provisions evince congressional intent to protect the assets of Medicaid recipients, and to ensure that beneficiaries are not forced to personally bear the costs of their medical care. Meanwhile, the reimbursement and forced assignment provisions require states to recover the costs of medical assistance payments despite the apparent prohibition against seeking recovery of medical assistance payments.
The Supreme Court has ruled that the anti-lien statute prohibits states from placing a lien upon settlement proceeds which are not “designated as payments for medical care,” as those non-medical proceeds qualify as a recipient’s property. See Ahlborn, 547 U.S. at 283-86, 126 S.Ct. 1752. Therefore, the federal anti-lien statute would prohibit a state from seeking reimbursement from the nón-medical expense portion of á recipient’s recovery, while the anti-recovery statute prohibits a state from obtaining reimbursement for an amount that is more than the total amount of medical assistance provided.
b. Florida’s Medicaid Third Party Liability Act
In accordance with the federal mandate to recover money for both the state and the federal government, Florida enacted section 409.910, the Florida Medicaid Act. See, e.g., Englich v. Agency for Healthcare Admin., 916 So.2d 994, 995 n. 2 (Fla. 4th DCA 2005). The statute provides a clear expression of the legislature’s intent, as follows:
(1) It is the intent of the Legislature that Medicaid be the payor of last resort for medically necessary goods and services furnished to Medicaid recipients. All other sources of payment for, medical care are primary to medical assistance provided by Medicaid. If benefits of a liable third party are discovered or become available after medical assistance has been provided by Medicaid, it is the intent of the Legislature that Medicaid be repaid in full and prior to any other person, program, or entity. Medicaid is to be repaid in full from, and to the extent of, any third-party benefits, regardless of whether a recipient is made whole or other creditors paid. Principles of common law and equity as to assignment, lien, and subrogation are abrogated to the extent necessary, to ensure full recovery by Medicaid from third-party resources. It is intended that if the resources of a liable third party become available at any time, the public treasury should not bear the burden of medical assistance to the extent of such resources.
§ 409.910(1), Fla. Stat. (2014) (emphasis added).
In compliance with the federal Medicaid statute, after AHCA “has provided medical assistance under the Medicaid program, it shall seek recovery of reimbursement from third-party benefits to the limit of legal liability and for the full amount of third-party benefits § 409.910(4). In furtherance of this mandate, AHCA has been afforded 'the right to “institute, intervene in, or join any legal or administrative proceeding in its own name ... as lienholder.” *117 § 409.910(11). Section 409.910(11)® further provides: ... -
[I]n the event of an action in tort against a third party in which the recipient or his or her legal representative is a.party which results in a judgment, award, or settlement from a third party, the amount recovered shall be distributed as follows:
1. After attorneys fees and taxable costs as defined by the Florida Rules of Civil Procedure, one-half of the remaining recovery shall be paid to the agency up to the total amount of medical assistance provided by Medicaid.
2. The remaining amount of the .recovery shall be paid to the recipient.
3. For purposes of calculating the agency’s recovery of medical assistance benefits paid, the fee for services of an attorney retained by the recipient or his or her legal representative shall be calculated at 25 percent of the judgment, award, or-settlement.
4. Notwithstanding any provision of this section to the contrary, the agency shall be entitled to all medical coverage benefits up to the total amount of medical assistance provided by Medicaid. For purposes of this paragraph, “medical coverage” means any benefits under health insurance, a health maintenance organization, a. preferred provider arrangement, or a prepaid health clinic, and the portion of benefits' designated for medical payments under coverage for workers’ compensation, personal injury protection, and casualty.
§ -409.910(11)©, Fla. Stat.
Under these -provisions, AHCA is permitted to seek reimbursement from “third-party benefits,” § 409.910(6), including those benefits received 'from any “causes of action, suits, claims, counterclaims, and demands that accrue to the recipient or to the recipient’s legal representative, related to any covered injury, illness, or necessary medical care, goods, or services” for which Medicaid, paid. § 409.901(7)(a), Fla. Stat. (2014). These benefits also encompass “[a]ll judgments, settlements, and settlement agreements rendered or entered into and related to such causes of action, suits, claims, counterclaims, demands, or judgments.” § 409.901(7)(b). Section 409.910(7) specifically describes from whom such recovery may be made:
(7) The agency shall recover the full amount of all medical assistance provided by Medicaid on behalf of the recipient to the full extent of third-party benefits.
(a) Recovery of such benefits shall be collected directly from:
1. Any third party;
2. The recipient or legal representative, if he or she has received third-party benefits; ■■
3. The provider of a recipient’s medical services if third-party benefits have been recovered'by the provider; notwithstanding any provision, of this section, to the contrary, however, no provider shall be required to refund or pay to the agency any amount in excess of the actual third-party benefits received by the provider from a third-party payor for medical services provided to the recipient; or
4. Any person who has received the third-party benefits.
§ 409.910(7), Fla. Stat. (emphasis added).
In light of these provisions, AHCA was clearly authorized to pursue legal proceedings to obtain reimbursement for the medical care it provided from the settlement proceeds the Estate recovered from the driver’s insurance carrier.
c. Florida Cases Pre-Ahlbom
In Englich, the personal representative of a decedent appealed from “an order *118 requiring the proceeds of a wrongful death settlement to pay a Medicaid lien in full.” 916 So.2d at 995. The personal representative had “filed a motion to allocate the settlement proceeds so that the Medicaid lien would be reduced by half, the same percentage that the settlement proceeds bore to the total amount of the survivors’ claims,” but AHCA argued that the lien attached to the entire settlement, not just the amount attributable to the estate. Id. The trial court agreed with AHCA. Id. at 996.
We began our analysis by making a few observations:
While the wrongful death statute[2] addresses the claims of the decedent’s estate and the survivors, it does not address Medicaid liens.
The Florida Wrongful Death Act[3] provides a statutory cause of action against negligent third-parties. The Medicaid Third-Party Liability Act controls Medicaid’s right to recover payments made for the provision of medical care to the decedent. We must decide the priority to be given these statutory provisions.

Id.

We looked to other Florida cases for guidance in reaching our decision in English, including Agency for Health Care Administration v. Estabrook, 711 So.2d 161 (Fla. 4th DCA 1998), where we had earlier held that “Medicaid must be reimbursed in full ‘even if such liability includes components not financed by Medicaid,’ such as workers’ compensation.” Id. at 996-97 (quoting Estabrook, 711 So.2d at 166-67). Ultimately, we affirmed the trial court’s denial of the estate’s request to reduce the Medicaid lien. Id. at 997.
In a similar case from the Second District, Strafford v. Agency for Health Care Administration, 915 So.2d 643, 644 (Fla. 2d DCA 2005), the co-personal representatives petitioned the probate court to apportion money received as a result of the settlement reached for the wrongful death of the decedent. AHCA objected to the apportionment “because it did not provide for the full payment of the Medicaid lien due the State under the Medicaid Third-Party Liability Act.” Id. The court noted that section 409.910(ll)(f) provided that “after attorney’s fees — calculated at twenty-five percent of the judgment or settlement — and costs are deducted, one-half of the remaining recovery shall be paid to the Agency up to the total amount of medical assistance provided.” Id. at 645-46. As a result, the Second District held that AHCA was “entitled to recover the full amount of the Medicaid lien from the entire settlement amount subject to the limiting formula in section 409.910(ll)(f).” Id. at 646.
The Strafford court noted that the settlement occurred “in the context of a wrongful death action,” and thus the recoverable damages for the survivors and the estate were controlled by the wrongful death statute. Id. Nonetheless, it found that the Florida Medicaid Act:
require[d] that the Agency be paid prior to any apportionment between the estate and the survivors. Based on the amount of the settlement, the lien, and the attorney’s fees and costs in this case, the distribution scheme in section 409.910(ll)(f) entitles the Agency to the full recovery of its Medicaid lien.

Id.

Subsequently, in Ross v. Agency for Health Care Administration, 947 So.2d *119 457, 458 (Fla. 3d DCA 2006),- the personal representative of a decedent tried to allocate settlement proceeds “among the survivors, the attorneys and (AHCA], allocating for [AHCA] an amount that satisfied just 25% of the total Medicaid lien.” Relying on the Englich and Strafford opinions, the Third District found that:
Contrary to the personal representative’s contention, she does not have the right to allocate the settlement funds in such a manner that the Agency receives less than the full amount of its expenditures for medical assistance. [Strafford, 915 So.2d at 645] (“Following a settlement, the court is required to segregate an amount sufficient to repay the Agency’s expenditures for medical assistance and shall order this amount to be paid directly to the Agency.”). The Wrongful Death Act does not alter this requirement. [Englich, 916 So.2d at 995-97].
Id. at 458.
d. Federal cases
In 2006, the United States Supreme Court decided Ahlbom and interpreted the anti-lien statute in the context of both federal and state law. 547 U.S. at 275-88, 126 S.Ct. 1752. There, the State of Arkansas asserted a lien against the settlement proceeds from a personal injury action for the total cost of payments made on the beneficiary’s behalf. Id. at 273-74, 126 S.Ct. 1752. The Court interpreted this as an attempt to “lay claim to more than the portion of Ahlborn’s settlement that represented] -medical expenses.” Id. at 280, 126 S.Ct. 1752.
The Court found that requirements imposed on the states for acquiring the rights of individuals to payment from third parties through a statutory assignment created an exception to the anti-lien statute. Id. at 284, 126 S.Ct. 1752. However, the Court also held that the anti-lien statute prohibited states from imposing a lien on. any portion of a recipient’s tort recovery representing non-medical expense damages. Id. at 284-85, 126 S.Ct. 1752. While the Court affirmed a state’s right to seek reimbursement in accordance with the federal Medicaid statute, it held that the right to reimbursement “does not mean that the State can \.. place a lien on[ ] any other portion of [the recipient’s] property.” Id. at 284, 126 S.Ct. 1752. In effect, a state’s recovery was “limited to payments for medical' care.” Id. at 285, 126 S.Ct. 1752.
Many states adhere to a formula to'determine the medical expense portion of a recipient’s settlement, as opposed to what comprises nonmedical expenses, and the Court addressed these methods in Wos v. E.M.A. ex rel. Johnson, — U.S. --, 133 S.Ct. 1391, 1396-99, -185 L.Ed.2d 471 (2013). There, the Court held that any reimbursement calculation using a statutory formula to determine an apportionment of medical and non-medical expenses (such as that found in section 409.910(ll)(f)) was not conclusive, and could be challenged in a judicial or administrative proceeding by demonstrating, with evidence, that the lien amount exceeded the amount recovered for medical expenses. See 133 S.Ct. at 1398-99. Citing to Ahlborn, the Court noted that “[t]he Medicaid anti-lien provision prohibited] a State from making a claim to any part of a Medicaid beneficiary’s tort recovery not ‘designated as payments for medical care,’ ” id. at 1398 (quoting 547 U.S. at 284, 126 S.Ct. 1752), and concluded that in light of the conflict be-tweén the North Carolina state anti-lien statute and the Court’s precedent in Ahl-bom, the North Carolina statute was preempted: “[a]n irrebuttable, one-size-fits-all statutory presumption is incompatible with the Medicaid Act’s clear mandate that a State may not demand any portion of a beneficiary’s tort recovery except- the *120 share that is attributable to medical expenses.” Id. at 1399.
e. Analysis
AHCA claims that the federal anti-lien statute, and any subsequent preemption of the Florida Medicaid Act under Ahlbom and Wos, is not applicable because the holdings in those cases do not apply to wrongful death actions. It argues that, according to the language of the anti-lien statute providing that “[n]o lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan,” § 1396p(a)(l) (emphasis added), section 409.910(ll)(f) is not preempted. We agree.
The plain language of section 1396p(a)(l) clearly reflects Congress’ intent that the anti-lien statute apply only to recoveries by Medicaid recipients who are living when the settlement or judgment against the third party is obtained, and not to recoveries made by an estate or beneficia1 ry in 'a wrongful death action. The anti-lién statute doés not apply to preempt the state statute in all cases, and thus does not prohibit a state from imposing a lien against the deceased recipient’s recovery from third parties for the full amount paid for medical expenses.
The Estate’s reliance on Ahlbom and Wos for the proposition that those decisions preempted section 409.910(1l)(f) is misplaced and unpersuasive, given that neither of those cases applied the anti-lien statute in the context of a wrongful death action; Also, the Florida cases the Estate relies on to prgue federal preemption arose in the context of a survival action, see Roberts, 119 So.3d at 457, or where the recipient died after a .settlement was reached, see Agency for Health Care Admin. v. Riley, 119 So.3d 514, 515 (Fla. 2d DCA 2013), unlike the circumstances presented in Englich, Strafford, and Ross.
In Roberts, we held that section 409.910 “creat[ed] a presumptively valid allocation of settlement proceeds subject to a Medicaid lien when AHCA does not participate in the settlement agreement,” as is the case here. 119 So.3d at 465. We found that the allocation set forth in. section 409.910 was merely a “default allo'cation, which could run afoul of federal anti-lien and anti-recovery statutes if, for example, the majority of an award (after attorney’s fees and costs) is not allocable to medical expenses.” Id. at 465-66. Following a close reading of our holding in Roberts, we can find no support there for the.Estate’s assertion that the Supreme Court’s application of Ahlbom to the federal anti-lien statute would represent a rule of general applicability for Medicaid recipients in both survival and wrongful death actions.
Therefore, we disagree with the Estate’s position that section 409.910(ll)(f) has been preempted by Ahlbom and Wos. Under the principles of conflict preemption, a state law is preempted where, in practice, it acts to thwart Congress’ intentions:
This Court, when describing conflict pre-emption, has spoken of pre-empting state law that “under the circumstances of th[e] particular case ... stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress” — whether that “obstacle” goes by the -name of “conflicting; contrary to; ... repugnance; difference; irreconcilability; inconsistency; violation; curtailment; ... interference,” or the like.
Geier v. Am. Honda Motor Co., 529 U.S. 861, 873, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000) (alterations in original) (quoting Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)).
*121 This court has also explained federal preemption as follows:
The doctrine of conflict preemption prevents state laws which conflict with federal statutes from being applied. Conflict preemption occurs where a federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively or when state law is in actual conflict with federal law. Conflict preemption turns on the identification of actual conflict and not an express statement of preemptive intent.
Liggett Grp., Inc. v. Davis, 973 So.2d 467, 471 (Fla. 4th DCA 2007) (citations omitted) (internal quotation marks omitted).
Here, no actual conflict between the ' state and federal statutes exists, nor is there any express statement by Congress of any preemptive intent to be applied against section 409.910(ll)(f) in situations where the lien has been placed on a decedent’s property.
Our conclusion is consistent with prior Florida state court decisions that have also considered the interplay between the Florida Medicaid Act with the Wrongful Death Act:
[T]he settlement in this case occurred in the context of a wrongful death action in which the recoverable damages for the survivors and the decedent’s estate are distinct and limited by section 768.21, Florida Statutes (2003). Even so, the [Medicaid Third Party Liability Act’s] provisions require that the Agency be paid prior to any apportionment between the estate and the survivors.
Strafford, 915 So.2d at 646 (emphasis added); see also Ross, 947 So.2d at 458 (stating that “[t]he Wrongful Death Act does not alter th[e] requirement” that AHCA receive the full amount of its expenditures for medical assistance).
Thus, even, though Englich, Strafford, and Ross pre-date the Ahlbom and Wos decisions, their holdings are • distinguishable from Ahlbom and Wos, • and remain good law. ■ • . ,
We can envision several valid reasons why a different recovery framework might be applied to a survival action as opposed to a wrongful death action. In a survival action, the need to provide greater protection to a Medicaid recipient’s personal assets could be based upon a desire to maximize the recipient’s available assets received from third parties available to pay non-medical or other needs. This would further a legitimate government interest by allowing such recipients to keep more of their property, including, any payments from third parties received during their lifetime, with the goal of helping them maintain their standard of living as long as possible without the .need to rely, on additional forms of public assistance. Such concerns do not apply when assets or third party payments are received by an estate or its beneficiaries rather than by a living person.
Also, while a recipient is still alive, they may incur unexpected or uncovered medical expenses in the future. Allowing recipients to keep more unencumbered property increases the likelihood that those needs can be met from the recipient’s available resources. Upon death, a recipient no longer incurs medical or non-medical expenses, and the amount of expenditures will be fixed.
The plain wording of the anti-lien statute evinces Congress’ intent to protect the needs of living Medicaid recipients rather than various third parties. By allowing . states to recover these expenditures, Congress also clearly intended to protect the public fisc over any derivative *122 interests that might inure to the benefit of estates, beneficiaries, or survivors of a decedent. As the Court has stated in the past, the judiciary’s “task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, ‘that language must ordinarily be regarded as conclusive.’ ” Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 570, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982) (quoting Consumer Prod. Safety Comm’n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)). Our decision today gives effect to Congress’ will, in which the state’s financial resources were clearly a major consideration, just as they are for state courts on such issues as well:
When the Supreme Court of Florida had occasion to determine the constitutionality of the Medicaid Third-Party Liability Act, it warned the judicial branch to “be cautious when evaluating the choices made by the legislative branch as to the appropriate funding for programs it has deemed important to the public welfare. We must avoid unnecessarily limiting the funding options available to the legislature when addressing today’s policy problems.”
Englich, 916 So.2d at 996 (quoting Agency for Health Care Admin. v. Associated Indus. of Fla., Inc., 678 So.2d 1239, 1243 (Fla.1996)).
Finally, we also note that while this case was pending in our court, the Third District was presented with the opportunity to consider these exact issues. In Estate of Hernandez v. Agency for Health Care Administration, 190 So.3d 139, 143 (Fla. 3d DCA 2016), the court held, as we do here, that the anti-lien statute applied only to monies recovered by living Medicaid recipients and not to wrongful death settlements:
By its express terms, the Medicaid Act’s anti-lien provision does not apply to a Medicaid lien imposed against the property of a Medicaid recipient after her death. We cannot ignore the plain meaning of this provision. As our Supreme Court has repeatedly stated, “[i]f the language of the statute is clear and unequivocal, then the legislative intent must be derived from the words used without involving incidental rules of construction or engaging in speculation as to what the judges might think that the legislators intended or should have intended.” Hess v. Philip Morris USA, Inc., 175 So.3d 687, 692 (Fla.2015) (citation omitted). Thus, we hold that the federal Medicaid Act’s anti-lien provision does not preempt Florida’s Medicaid Third-Party Liability Act where a Medicaid lien is imposed on a wrongful death settlement.
(Alteration in original).
As the Third District noted, this conclusion comports with the decision of at least one other state court, which held that “ ‘[t]he plain language of 42 U.S.C. § 1396p(a)(1) clearly reflects Congress’ intent that the anti-lien provision apply only to living Medicaid recipients.’ ” Id. at 143 (quoting Austin v. Capital City Bank, — Kan.App.2d -, No. 111,894, 2015 WL 4366519, at *4 (Kan.Ct.App.2015)).
Based on the foregoing, the trial court correctly ruled that AHCA is entitled to recover the full amount of its Medicaid lien because the federal Medicaid Act’s anti-lien statute applies only to living Medicaid recipients.

Affirmed.

GROSS and DAMOORGIAN, JJ., concur.

. The Estate provided evidence at the hearing on its motion that the net amount from the settlement was approximately $327,000, of which 3.5% would be $11,469.26. The Estate therefore argued that the Medicaid lien should be reduced to that amount.

. § 768.21, Fla. Stat. (2014).

. §§ 768.16-768.26, Fla. Stat. (2014).