MARIA ISABEL GIRALDO and JUAN GONZALO VILLA, as Co-Personal Representatives of the Estate of JUAN L. VILLA,

      Appellants,

v.

AGENCY FOR HEALTH CARE ADMINISTRATION,

      Appellee.

_____/

IN THE DISTRICT COURT OF APPEAL FIRST DISTRICT, STATE OF FLORIDA

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF FILED

CASE NO. 1D16-0392

Opinion filed December 12, 2016.

An appeal from a Final Order of the Division of Administrative Hearings. Elizabeth W. McArthur, Administrative Law Judge.

Floyd Faglie of Staunton & Faglie, PL, Monticello; Celene H. Humphries and Maegen Peek Luka of Brannock & Humphries, Tampa, for Appellants.

Alexander R. Boler, Tallahassee, for Appellee.

WELLS, LINDA ANN, Associate Judge.

On September 12, 2010, Juan L. Villa suffered catastrophic injury to his spine when the all-terrain vehicle he was riding overturned. Villa, claiming both economic and noneconomic damages, brought products liability and negligence claims against those allegedly liable for his injuries. Florida's Agency for Healthcare

Administration ("AHCA"), which administers Florida's Medicaid program,[1] paid for portions of Villa's medical care. By accepting Medicaid benefits, Villa automatically subrogated his right to third-party benefits for the full amount of medical assistance provided by Medicaid and automatically assigned to AHCA his right, title, and interest to those benefits, other than those excluded by federal law. See § 409.910(6)(a), (b), Fla. Stat. (2014); see also 42 U.S.C. § 1396k(a)(1) (requiring states participating in the federal Medicaid program to provide, as a condition of Medicaid eligibility, assignment to the state the right to payment for medical care from any third party). These same benefits also became subject to an automatic lien in AHCA's favor "for the full amount of medical assistance provided by Medicaid" as soon as Villa began to receive treatment for which AHCA became obligated to pay. § 409.910(6)(c), Fla. Stat. (2014).

On March 2, 2015, AHCA asserted a $322,222.27 Medicaid lien against any future settlement of, or recovery from, the action Villa had brought to recover for the injuries he had incurred in the all-terrain vehicle accident. AHCA later updated the Medicaid lien amount to $324,607.25.[2]

---

[1] See § 409.901(2), Fla. Stat. (2014) (defining AHCA as the Medicaid agency for the state as provided by federal law).

[2] The ALJ's order concluded:

> 9. Nearly all of Petitioner's past medical expenses following the ATV incident were paid for by Medicaid. As of March 2, 2015, the total

2

A month later, Villa settled his case against one of a number of defendants in his products liability/negligence action. Although the settlement agreement between these two parties did not itemize the different sums that Villa was to recover for each element of damage that he claimed,[3] it did state that his "alleged damages have a value in excess of $25,000,000.00," and that Villa and the settling defendant had agreed to allocate $4817.56 of the undifferentiated settlement total to Villa's claim for past medical expenses.[4]

---

amount of medical assistance provided by the Medicaid program was $322,222.27, representing over 92 percent of the $347,044.67 paid in total for past medical expenses. The rest of Petitioner's medical expenses were paid for by United HealthCare ($1457.40) and Medicare ($23,365.00).

. . . .

12. By letter dated March 2, 2015, AHCA asserted a $322,222.27 Medicaid lien against Petitioner's cause of action and any future settlement of, or recovery from, that action. Thereafter, AHCA updated the Medicaid lien amount to $324,607.25.

[3] Among other things, Villa claimed damages for pain and suffering and mental anguish; for loss of wages and earning capacity; for mental and physical impairment; and for past and future medical expenses.

[4] Villa's counsel later testified that this amount was a mathematical error and that the correct sum was $13,881.79. Counsel admitted that he drafted this provision and intended to put in an amount that represented the same proportion to the total for past medical expenses as the total settlement amount represented to the total value of the damages claimed by Villa. That is, Villa settled for approximately 4% of the total damage amount claimed ($25,000,000), therefore, according to Villa, making AHCA entitled to only 4% ($13,881.79) of the amount of Villa's past medical expenses.

Shortly after settling, Villa's counsel notified AHCA of the settlement and provided AHCA with a copy of the executed settlement agreement, along with an itemization of Villa's litigation costs in the tort lawsuit. The letter asked AHCA to advise Villa of the amount AHCA would accept from the settlement proceeds to satisfy its Medicaid lien. AHCA responded claiming entitlement to $321,720.16 of Villa's settlement predicated on its calculation of the amount payable pursuant to the formula set forth in section 409.910(11)(f) of the Florida Statutes. See § 409.910(11)(f)1., Fla. Stat. (2014) (capping AHCA's recovery at one half of the total amount of the settlement proceeds after deducting attorneys' fees and costs).[5]

Villa then petitioned the Division of Administrative Hearings (DOAH) for a formal administrative proceeding to contest the amount designated by AHCA "as recovered medical expense damages" and for a determination of the amount payable to AHCA to satisfy the agency's Medicaid lien. See § 409.910(17)(b), Fla. Stat. (2015) (providing that a Medicaid recipient may contest the amount designated as recovered medical expense damages under paragraph (11)(f)). The matter was tried before an administrative law judge (ALJ) the following October, but before a final

---

[5] Villa does not dispute the accuracy of the amounts utilized in AHCA's calculations for attorney's fees and costs and stipulated that the final sum requested by AHCA was accurately calculated pursuant to the parameters set forth in section 409.910(11)(f) of the Florida Statutes. He also does not deny that Medicaid paid more than the $321,720.16 requested to defray his medical costs.

order could be entered, Villa died, and the co-personal representatives of his estate stepped in.[6]

On December 30, 2015, a comprehensive final order was entered rejecting Villa's claim that less than the $321,720.16 allocated under the paragraph (11)(f) formula should be allocated as reimbursement for Villa's medical expenses. In doing so, the ALJ rejected the notion that the $13,881.79 allocation purportedly agreed to by Villa and the settling third-party tortfeasor (based on their $25,000,000.00 estimate of total damages) constituted clear and convincing evidence that an amount less than the paragraph (11)(f) amount should be allocated, because "neither the agreed total value of 'alleged' damages nor the agreed allocation of settlement proceeds [between Villa and the settling third-party tortfeasor] to compensate for past medical expenses . . . can be credited as reasonable products of arms-length adversarial negotiation."

The ALJ also concluded that two-year old hearsay reports from a vocational rehabilitation specialist and an economist failed to supply the evidentiary support essential to the current paragraph (17)(b) challenge because neither report segregated medical damages from non-medical damages and neither reflected circumstances

---

[6] Villa died on October 31, 2015, and the ALJ was put on notice before proposed final orders from the parties were due.

existing at the time of the evidentiary hearing.[7]  Lastly, the ALJ rejected Villa's argument that section 409.910(17)(b) impermissibly required him to include any future medical expense award in calculating the amount that must be allocated from his total recovery as available to satisfy the lien at issue.

Villa[8] here challenges the determination that he failed to "prove, by clear and convincing evidence, that a lesser portion of the total recovery should be allocated as reimbursement for past and future medical expenses than the amount calculated by the agency pursuant to the formula set forth in [section 409.910](11)(f) or that Medicaid provided a lesser amount of medical assistance than that asserted by the agency." § 409.910(17)(b), Fla. Stat. (2014) (footnote omitted).  Villa claims that the factual findings detailed in the final order are unsupported by competent substantial evidence and that the legal conclusions underpinning the final order are erroneous.

We find no error in any of the ALJ's factual findings or legal determinations. First, we reject Villa's claim that because the testimony of the two witnesses he called at the evidentiary hearing (one of whom was his trial attorney) was unrebutted,

---

[7] The co-personal representatives of Villa's estate dispute the validity of the ALJ's consideration of the fact that post settlement Villa had died.  At most, this was just another reason the court found the dated expert reports unpersuasive.

[8] While we refer to Villa, it is the two co-personal representatives who make the arguments advanced herein.

that the ALJ had no choice but to accept that testimony as probative. See Fox v. Dep't of Health, 994 So. 2d 416, 418 (Fla. 1st DCA 2008) ("It is well-established that the ALJ was not required to believe [witness's] testimony, even if unrebutted."). "[T]he trier of fact is never bound to believe any witness, even a witness who is uncontradicted . . . . It is not our prerogative to judge the credibility of witnesses . . . . There is no substitute for seeing and hearing persons testify." Walker v. Fla. Dep't of Bus. & Prof'l Regulation, 705 So. 2d 652, 655 (Fla. 5th DCA 1998) (J. Dauksch, concurring specially).

More to the point, the burden was on Villa to prove by clear and convincing evidence that a lesser amount was to be allocated from the total recovery. Clear and convincing evidence requires:

> that the evidence must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the testimony must be precise and explicit and the witnesses must be lacking in confusion as to the facts in issue. The evidence must be of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established.

Slomowitz v. Walker, 429 So. 2d 797, 800 (Fla. 4th DCA 1983).

On the record before us, we cannot disagree with the ALJ's rejection of trial counsel's unilateral determination of the amount to designate in the settlement agreement as that portion of the total settlement to be allotted to medical expenses. Likewise, we find no error in the ALJ's determination that out-dated hearsay expert

reports, which did not segregate medical from non-medical damages, failed to support the relief sought by Villa—a determination that section 409.910(11)(f) should not be applied. Nor can we disagree with the ALJ's decision that it was proper to reject testimony that the formula used by the parties to the settlement agreement to arrive at a $13,881 allocation for medical expenses was a "reasonable" or "fair" approach, a fortiori because the settlement agreement prepared by Villa's counsel allocated not $13,881 but only $4,817.56 as the amount against which AHCA could draw, and only later modified that figure. We therefore find no error in the ALJ's factual determinations about which Villa complains.

Second, we find no error in the ALJ's legal determination relating to AHCA's right to secure reimbursement for payments already made for medical costs from not only that portion of the settlement allocated for past medical expenses but also from that portion of the settlement intended as compensation for future medical expenses. We do so initially because that is precisely what Florida law required the ALJ to do. Section 409.910(11)(f) sets forth the formula for determining that portion of a Medicaid recipient's "recovery" pursuant to a settlement with a third party that must be allocated to satisfy "the total amount" of medical costs Medicaid has provided. § 409.910(11)(f), Fla. Stat. (2014). Specifically, the formula allocates one half of the gross (or entire settlement) recovered (which would include the recipient's recovery

8

for past and future medical costs) less only attorney's fees and costs as designated to repay the state's Medicaid agency for the medical expenses that it has paid.

Likewise, section 409.910(17)(b), which authorizes a Medicaid recipient to challenge the amount allocated under section 409.910(11)(f), expressly requires consideration of the amounts the Medicaid recipient has "recovered" to reimburse him or her "for past and future medical expenses." § 409.910(17)(b), Fla. Stat. (2014). Section 409.910(17)(b) then requires the Medicaid recipient to prove by clear and convincing evidence that a smaller portion of this recovery should be made available for payment to AHCA than the amount established under section 409.910 (11)(f):

> (17)(b) A [Medicaid] recipient may contest the amount designated as recovered medical expense damages payable to the agency pursuant to the formula in paragraph (11)(f) by filing a petition under chapter 120 . . . . In order to successfully challenge the amount payable to the agency, the [Medicaid] recipient must prove, by clear and convincing evidence, that a lesser portion of the total [settlement] recovery should be allocated as reimbursement for past and future medical expenses than the amount calculated by the agency pursuant to the formula set forth in paragraph (11)(f) . . . .

Id.

Pursuant to prevailing law, Villa was obligated to establish as part of his challenge that portion of his recovery that he claimed was attributable to reimbursement by the third-party tortfeasor for both his past and his future medical expenses. Since Villa intentionally introduced no evidence as to the amount recovered for future medical expenses, the ALJ was correct in determining that he

9

failed to satisfy his burden under section 409.910(17)(b) to avoid application of the statutory formula contained in section 409.910(11)(f).

Moreover, notwithstanding Villa's assertion to the contrary, nothing in section 409.910(11)(f), section 490.910(17)(b), or the ALJ's application of those provisions runs afoul of either federal law or federal or state legal precedent. "Medicaid is a cooperative federal-state welfare program providing medical assistance to needy people." Roberts v. Albertson's Inc., 119 So. 3d 457, 458 (Fla. 4th DCA 2012) (quoting Agency for Health Care Admin. v. Estabrook, 711 So. 2d 161, 163 (Fla. 4th DCA 1998)); see also 42 U.S.C. § 1396a(a)(25)(A)-(B). Although state participation in this federal program is voluntary, once a state elects to participate, it must comply with federal Medicaid law. Roberts, 119 So. 3d at 458; see also Wilder v. Va. Hosp. Ass'n, 496 U.S. 498, 502 (1990).

Federal law requires that participating states seek reimbursement for medical expenses incurred on behalf of Medicaid recipients who later recover from legally liable third parties. This obligation is not, however, unbounded. As Arkansas Department of Health & Human Services v. Ahlborn, 547 U.S. 268, 282 (2006), confirms, these obligations are circumscribed by the anti-lien (and the anti-recovery) provisions of the federal Medicaid Act, which authorize payment to a state only from those portions of a Medicaid recipient's third-party settlement recovery allocated for payment of medical care. See 42 U.S.C. § 1396p(a)(1) (providing that no lien may

be imposed against the property of any individual prior to death on account of medical assistance paid or to be paid on his behalf under a state plan); see also 42 U.S.C. § 1396p(b)(1) (providing no adjustment or recovery of any medical assistance correctly paid on behalf of an individual under a state plan may be made except in limited circumstances).

In Ahlborn, a Medicaid recipient filed a tort suit seeking to recover damages for past and future medical expenses, permanent physical injury, past and future pain and suffering, mental anguish, and lost earnings among other things. The Arkansas state Medicaid agency intervened in the action to assert a lien for the full amount it had paid for Ahlborn's medical care. After the action settled, without the agency's input and without allocation of the damage awards, Ahlborn sought a declaration that satisfaction of the state's lien "would require depletion of compensation for injuries other than past medical expenses." Ahlborn, 547 U.S. at 274. The United States District Court for the Eastern District of Arkansas concluded that Ahlborn had assigned her right to any recovery from third-party tortfeasors to the full extent of Medicaid's payments for her benefit and thus the state Medicaid agency was entitled to recover the full amount of its lien even if that amount exceeded the amount of her recovery for medical care. The Eighth Circuit reversed, holding that the state "was entitled only to that portion of the judgment that represented payments for medical care."

11

On appeal to the United States Supreme Court, the state's claim was that it was entitled "to more than just that portion of a judgment or settlement that represents payment for medical expenses." Id. at 278. The Court rejected that claim, concluding first that federal law authorizing the states to seek reimbursement from legally liable third parties for medical assistance to Medicare recipients extended only to the "legal liability of [the] third party . . . *to pay for care and services available under [a state's Medicaid] plan*." Id. at 280 (citing 42 U.S.C. § 1396a(a)(25)(A)). The Court next concluded that the federal law's mandate that "that the State must be assigned 'the rights of [the recipient] to payment by any other party'" sanctioned only "an assignment of rights to payment for [nothing] other than medical expenses—not lost wages, not pain and suffering, not an inheritance." Id. at 281 (citing 42 U.S.C. § 1396a(a)(25)(H)). Finally, the Court found that the requirement in section 1396k(b) of the Medicaid Act, like other provisions of the Medicaid Act relating to recoveries from third-parties, which requires a state to "fully" reimburse Medicaid from any "amount recovered . . . under an assignment" before the remainder is remitted to the Medicaid recipient, "extends only to recovery of payments for medical care," Id. at 282:

> Accordingly, what §1396k(b) requires is that the State be paid first out of any damages representing payments for medical care before the recipient can recover any of her own costs for medical care.

12

Id. at 281 (citing 42 US.C. § 1396k(b)) (relating to "where the State actively pursues recovery from the third party").

None of these determinations, as Villa argues here, "indicate" that a state Medicaid program may recover only from that portion of a Medicaid recipient's third-party settlement recovery allocated to past medical expenses. Rather, these determinations confirm that a state Medicaid program is to be paid "first" from "any" recovery from a third-party for the "medical care" of a Medicaid recipient before any others may be paid—this would include recovery of amounts allocated to both past and future medical care. In fact, the Court acknowledged that while the anti-lien prohibition of the Medicaid Act appears to ban "even a lien on that portion of the settlement proceeds [from a third-party tortfeasor] that represents payments for medical care," the Act carves out exceptions where a Medicaid recipient assigns the right or a chose in action to receive payments for medical care or where the recipient "'assign[s]' in advance any payments that may constitute reimbursement for medical costs." Id. at 284. Ahlborn does not, therefore, "indicate" that a Medicaid recipient's future medical expense recovery may not be considered in determining that recipient's total recovery for medical expenses when allocating the amount that should be paid to Medicaid under Florida law.

Wos v. E.M.A., --- U.S. ---, 133 S.Ct. 1391, 185 L.Ed.2d 471 (2013), does not alter this conclusion. That decision does no more than confirm that a state may not

13

take any portion of a Medicaid beneficiary's tort settlement not designated as "payments" for medical care and does not attempt to distinguish or address settlement provisions designated as payments for past medical expenses as opposed to payments for future medical care.[9]

Villa points to no Florida decision that has specifically addressed the issue that we address here today, that is, whether amounts allocated for future medical expenses recovered by a Medicaid recipient in a third-party settlement may be considered in a section 409.910(17)(b) challenge to the application of the statutory formula provided in section 409.910(11)(f). Not even Davis v. Roberts, 130 So. 3d 264 (Fla. 5th DCA 2013), on which Villa relies, addresses this issue. Rather, the issue for resolution there was the same issue addressed in Wos as to whether a state Medicaid agency could "recover more than what [the Medicaid recipient's] settlement allocated for past medical expenses." In Davis, AHCA argued, and the trial court agreed, that no legal authority existed to allow Medicaid recipients to

_____

[9] In Dillard v. Agency For Health Care Administration, 127 So. 3d 820, 821 (Fla. 2d DCA 2013), the court explained:

> In Wos, the Court held that an "irrebuttable, one-size-fits-all statutory presumption is incompatible with the Medicaid Act's clear mandate that a State may not demand any portion of a beneficiary's tort recovery except the share that is attributable to medical expenses." 133 S. Ct. at 1399. The Court suggested that a State could remedy this problem by providing a process for determining which portion of the recovery is attributable to medical expenses. Id. at 1401–02.

14

demonstrate that some amount less than the amount calculated under the statutory formula stated in section 409.910(11)(f) should be allocated as that portion of a settlement available to pay for the recipient's past medical expenses. The District Court of Appeal, without discussing or applying section 409.910(17)(b),[10] determined that a Medicaid recipient "should be afforded the opportunity to seek the reduction of a Medicaid lien amount by demonstrating, with evidence, that the lien amount [established by section 409.910(11)(f)] exceeds the amount recovered for medical expenses." Id. at 270 (quoting Smith v. Agency for Health Care Admin., 24 So. 3d 590, 592 (Fla. 5th DCA 2009)). That is now precisely what section 409.910(17)(b) provides and what Villa attempted to prove, albeit unsuccessfully.

In Harrell v. State, 143 So. 3d 478, 480 (Fla. 1st DCA 2014), this court did no more than likewise conclude "we now hold that a plaintiff must be given the opportunity to seek reduction of the amount of a Medicaid lien established by the statutory formula outlined in section 409.910(11)(f), by demonstrating, with evidence, that the lien amount exceeds the amount recovered for medical expenses. When such evidence is introduced, a trial court must consider it in making a determination on whether AHCA's lien amount should be adjusted to be consistent

---

[10] Section 409.910(17)(b) became effective only four months before Davis was decided and apparently was not in effect at the time of the trial court's ruling in that matter. See Ch. 2013-150, § 2, Laws of Fla. (effective July 1, 2013).

with federal law." More to the point, at no time did either <u>Davis</u> or <u>Harrell</u> discuss or determine that the amount recovered by the Medicaid recipient for future medical costs or expenses either could or could not be considered in determining whether the amount established by section 409.910(11)(f) exceeds the amount recovered by the Medicaid recipient for medical care.

While it is true that AHCA may only secure payment for the amount it actually expended on Villa's behalf, that does not mean that it cannot collect that amount from the sums that Villa recovers for both past and future medical expenses. And while we acknowledge that a few post-<u>Ahlborn</u>/<u>Wos</u> decisions have determined that a state Medicaid agency may be paid only from a recipient's past medical cost award,[11] we choose instead to align ourselves with what we believe are the better

---

[11] While several cases conclude any award of future medical expenses cannot be included in that sum available for a state's lien, they provide little or no support for that proposition. In <u>E.M.A. ex rel. Plyler v. Cansler</u>, 674 F.3d 290, 312 (4th Cir. 2012), the court concluded "[a]s the unanimous <u>Ahlborn</u> Court's decision makes clear, federal Medicaid law limits a state's recovery to settlement proceeds that are shown to be properly allocable to past medical expenses." In <u>In re E.B.</u>, 729 S.E.2d 270 (2012), the West Virginia court, adopting <u>Cansler's</u> view of <u>Ahlborn</u>, concluded that the state's lien interest in a Medicaid recipient's lump sum settlement was limited to funds allocated solely to past, not future, medical expenses. However, as the dissent and concurring opinion in <u>E.B.</u> both conclude, the <u>E.B.</u> majority has <u>Ahlborn</u> all wrong—<u>Ahlborn</u> does not say future medical expenses cannot be considered. See <u>In re E.B.</u>, 729 S.E.2d at 306 (Ketchum, C.J., dissenting) ("The majority's holding is the result of an erroneous reading of the United States Supreme Court's seminal case on this issue, known as <u>Ahlborn</u>. Contrary to the conclusion reached in the majority opinion, <u>Ahlborn</u> clearly held that West Virginia can be reimbursed from any part of a settlement representing damages for medical expenses, past and future."(footnote giving citation omitted)); see also <u>In re E.B.</u>,

16

reasoned decisions of those courts which have held that a state agency may secure payment from both past and future recoveries for medical expenses. See In re Matey, 213 P. 3d 389, 394 (Id. 2009) (holding that the state could recover past medical payments from an allocation for future medical care); Cardenas v. Henneberry, 795 F. Supp. 2d 1189, 1197 (D. Colo. 2011) (concluding that because the Medicaid recipient intended to remain on Medicaid, "any funds allocated for future medical expenses should rightfully be exposed to the state's lien"); see also Special Needs Trust for K.C.S. v. Folkemer, No. 08:10-CV-1077-AW, 2011 WL 1231319, at *12 (D. Md. Mar. 28, 2011) ("The fact that the settlement in this case contained unstipulated amounts that might represent payments for future medical expenses, and the fact that the Department is seeking to recover from this unstipulated amount does not violate the anti-lien provision, especially when Maryland's recovery statute only allows Maryland to recover the amount that it has spent on past medical care.").

Finally, we reject Villa's argument that despite the fact that Villa and AHCA both agreed that Villa's death had no impact on what the ALJ was to determine, the final order reached the incorrect legal conclusion that Villa's death, nearly six months after the settlement, affected the analysis of how much of Villa's settlement

---

729 S.E.2d at 308 (Workman J., concurring in part, dissenting in part) ("[F]urther examination of Ahlborn and the Fourth Circuit's treatment thereof in E.M.A. ex rel. Plyler v. Cansler, 674 F.3d 290 (2012), demonstrates the overly restrictive reading the majority undertakes to preclude DHHR from obtaining reimbursement from amounts allocated to future medical expenses.").

AHCA could recover. While the ALJ did indicate that with the litigation continuing, and Villa having died, a date different from the date of settlement might be applicable, a careful reading of the final order demonstrates that the ALJ's decision is premised on a total failure of proof, rather than the choice of dates on which calculations should have been based. Thus, we find no error meriting reversal in this regard.

As previously stated, "Medicaid is a cooperative federal-state welfare program providing medical assistance to needy people." Roberts, 119 So. 3d at 458 (quoting Agency for Health Care Admin. v. Estabrook, 711 So. 2d 161, 163 (Fla. 4th DCA 1998)). To keep the Medicaid program viable, Congress recognized that it is necessary to obtain reimbursement when a third party makes payment to the Medicaid beneficiary for medical care already paid for by Medicaid. Roberts, 119 So. 3d at 459. As Roberts explains, the goal of the reimbursement provision of the Medicaid Act was at least in part to protect tax dollars. 119 So. 3d at 459 (citing Tristani v. Richman, 652 F.3d 360, 373 (3d Cir. 2011)). This, no doubt, is at least in part so that other "needy people" may secure the care they so desperately require. Writing on what we conclude as a nearly blank slate on this issue, we conclude the best way to satisfy that goal is to read section 409.910(17)(b) as meaning exactly what it says—that "[i]n order to successfully challenge the amount payable to the agency, the [Medicaid] recipient must prove, by clear and convincing

18

evidence, that a lesser portion of the total [settlement] recovery should be allocated as reimbursement for *past and future medical expenses* than the amount calculated by the agency pursuant to the formula set forth in paragraph (11)(f) . . . ." (Emphasis added).

The order under review is, therefore, affirmed.

LEWIS and ROWE, JJ., CONCUR.